FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 17 2010
TIME A.M. P.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
              :
JIM BROWN,    :     MEMORANDUM
              :     DECISION AND ORDER
        Petitioner, :
              :     10 Civ. 3012 (BMC)
    - against -    :
              :
UNITED STATES OF AMERICA, :
              :
        Respondent. :
              :
-------------------------------------------------------- X

**COGAN**, District Judge.

In his *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2255, petitioner seeks to set aside his guilty plea on the ground of ineffective assistance of counsel. I find that the petition is moot, untimely, and in any event, fails to show ineffective assistance of counsel.

## BACKGROUND

Petitioner, an illegal alien, pled guilty to one count of conspiracy to import cocaine, 21 U.S.C. § 963, 952(a), and 960(b)(2). Petitioner's role was to accept and sign for a package sent from Brazil, containing 2751 net grams of liquid cocaine. At the time he signed for the package (using an assumed name), petitioner did not know that federal agents had already detected the drugs, that the delivery was controlled, and that the deliveryman was an undercover agent. It appears that petitioner may have been a "buffer," i.e., someone used by the intended recipient of the package to protect that recipient from arrest in case the drugs were discovered, although petitioner's role in the conspiracy was not entirely clear. Petitioner was arrested as soon as he signed for the package, and he stated at that time that he knew the package contained drugs or guns. During his guilty plea before a Magistrate Judge, petitioner stated that "I signed for a

package that I knew contained liquid cocaine." Neither the plea agreement nor the Magistrate Judge advised him of the deportation consequences of his plea.

Prior to sentencing, petitioner, while still represented by the same counsel, filed a *pro se* "Motion to Clarify Guilty Plea Colloquy." I held a hearing on the motion, and it became apparent that the source of petitioner's concern was that the lab report from the test of the drugs had come back at a higher quantity than the parties had expected. The higher drug amount and its possible sentencing consequences caused petitioner to lose confidence in his attorney, and he was implicitly suggesting that he might want to seek to withdraw his guilty plea. In an abundance of caution, I relieved the prior attorney and appointed a new attorney under the Criminal Justice Act to confer with petitioner and determine whether he wanted to go forward with sentencing or move to withdraw his guilty plea. About six weeks later, I held a status conference at which petitioner elected not to appear, and new counsel advised that petitioner, after conferring with her, had determined not to seek to withdraw his guilty plea.

About six months later, I sentenced petitioner to 30 months in custody and three years of supervised release. During the sentencing hearing, I asked petitioner's new counsel why it had taken so long to bring the matter on for sentencing once she was appointed. She explained that petitioner was initially considering cooperating with the Government, but when it became apparent that he would likely not get an S-1 visa (and would therefore be deported), he had determined that cooperation might expose him or his family to violence in his home country after he was deported. Petitioner therefore determined not to cooperate. In explaining the sentence, I advised petitioner that I was taking into account (under 18 U.S.C. § 3553(a)) the fact that he would be deported as a mitigating factor.

2

# **THE INSTANT PETITION**

What I have construed as a habeas corpus petition is actually a letter from petitioner asking me to "vacate the drug trafficking charges." As I read the petition, petitioner does not deny his guilt; rather, he claims that because he has been labeled a "drug trafficker," he is going to be deported, and he wants the "drug trafficking" charge vacated (although he only pled to a single charge) so that he does not have that stigma and can avoid deportation. His letter says that when he tried to explain to the Immigration Judge that he was not a "drug trafficker," the Immigration Judge told him to have his conviction vacated by this Court.

The basis for the petition is his claim that he was pressured and misinformed by his first attorney into pleading guilty. He does not complain or assert, at least not expressly, that either of his attorneys failed to inform him of the deportation consequences of his guilty plea. Instead, he claims that his first attorney pressured him into signing the plea agreement, advising him that to do otherwise would mean that he would have to go to trial, where he would very likely lose, and face a sentence as long as 20 years.

Significantly, petitioner, to this day, remains quite happy with his second attorney. In his petition, he thanks me for appointing her, explaining that she "does her job professionally," and that she

> eliminated my fears and cleaned up the confusion I had. She worked with the prosecutor and brought up my minimal role, my acceptance of responsibility, my prior record and they agreed that I should get the lower end of the agreement. She was not satisfied with everything and insisted that I get the safety valve.

As a result of her efforts, petitioner states that "I was satisfied with" the sentence, and that "I was very happy with the outcome of the case as opposed to 20, 40 or 80 years in prison ... ."

Nevertheless, petitioner asserts that "my biggest problem is the drug trafficking charges which I agreed to take the plea bargain [sic] and signed. ... [N]ow that the agreement is the only evidence that is being used against me for deportation." Petitioner "objects [to] the charge." The distinction he appears to be drawing is that he merely signed for a package which he had reason to believe contained illegal drugs; this, in his view, does not make him a "drug trafficker." This reading of the petition is further confirmed by his statement: "Your Honor, I believed [sic] that you do not believe that I was a drug trafficker. The Ice [sic] agents after two days of questioning and hearing my story was [sic] able to find out who was the real drug trafficker." Nowhere does petitioner deny knowing that the package contained drugs. It appears that in petitioner's view, a "drug trafficker" is someone who is a "professional" in the illegal drug business – someone who sets up buys, sells, and deliveries – whereas all he did was receive a package on behalf of someone else, which to him is not "drug trafficking." He hopes that if I recognize this distinction, I will vacate his plea to the "drug trafficking" charge, and he can thereby avoid deportation.

The Government's opposition to the petition suggests that it does not agree with my interpretation of petitioner's position; it reads the petition as an outright denial of any knowledge that the package contained drugs. In my view, if there is an outright denial of knowledge in the petition, it is knowledge of the weight of the drugs, not that there were drugs; and to be fair, it is doubtful that the Government or the Court ever thought that petitioner knew the weight given his limited role in the offense. As the Government points out, it would be incredible for petitioner to assert that he had no knowledge that he was involved in *any* crime, given the multiple admissions he has made, both before and during the entry of his guilty plea.

4

In any event, the Government – on its reading of the petition – asserts that the petition is untimely, and even if it were timely, petitioner cannot satisfy either prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), with regard to his counseled decision to plead guilty. In a footnote, the Government notes that it is not addressing any claim that petitioner was inadequately advised of the deportation consequences of his plea because the Government does not read the petition as raising that issue and besides, both of his attorneys' statements and the Court's at sentencing show that he was aware that he was going to be deported.

The Court might have held argument or at least required more papers from petitioner to clarify his claim, but the Government also notes that petitioner was in fact deported months ago, shortly after filing the instant petition, and the Court has no contact information that would enable it to communicate with him.

## DISCUSSION

Regardless of how liberally I read petitioner's letter, there are no grounds for relief under 28 U.S.C. § 2255 <u>because the petition is moot, untimely, and without merit.</u>

### I. <u>Mootness</u>

Although the Government does not raise this ground for dismissal in its response, the petition appears to be moot. To be sure, deportation alone does not moot a habeas petition; if granting the writ would lift a statutory bar against a petitioner's reentry, then there is a "collateral consequence" of his conviction, which establishes a live case or controversy. See <u>Swaby v. Ashcroft</u>, 357 F.3d 156, 160 (2d Cir. 2004). But where, as here, it appears that petitioner's prior conviction already acts as a bar against his reentry – thereby defeating any collateral consequences from the challenged conviction – then the petition is moot. See e.g., <u>Goris v.</u>

Payant, 07 Civ. 7176, 2007 U.S. Dist. LEXIS 95547, at *3 (S.D.N.Y. Dec. 27, 2007); Brown v. Mazzuca, No. 03 CV 666, 2004 U.S. Dist. LEXIS 15107, at *11-16 (E.D.N.Y. Aug. 5, 2004); see also United States v. Mercurris, 192 F.3d 290, 294-95 (2d Cir. 1999) (because appellant was already barred from reentry based on the independent ground of having been convicted of a controlled substance offense, the district court's determination that he had committed an aggravated felony did not itself result in the collateral consequence of inadmissibility). The petition is moot because petitioner has already been deported, and his previous conviction for selling cocaine is an independent bar against his reentry. See 8 U.S.C. § 1182(a)(2)(A)(i)(II).

## II. **Timeliness**

The Government is correct that the petition is untimely. Under the Antiterrorism and Effective Death Penalty Act of 1996, petitioner had one year from the date his conviction became final to bring his petition. 28 U.S.C § 2255(f)(1). Judgment against him was entered on March 4, 2009 and petitioner waited more than a year, until May 20, 2010, to file his petition.

I have considered whether there are any grounds for equitably tolling petitioner's time to file, and can find none. Equitable tolling of the one year period can occur if there were "extraordinary circumstances" that prevented the petitioner from timely filing. Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004),. The only apparent ground for equitable tolling here would be the failure to advise petitioner of the deportation consequences of his plea if they were not known to him until deportation proceedings were already commenced earlier this year. But the record shows that he was well aware that his guilty plea entailed deportation – not only did I expressly tell him that at sentencing, but his second attorney made it clear that the reason he was not cooperating was that he knew he was going to be deported. The petition is therefore time-barred.

## III. Merits

Alternatively, if I read the letter the way the Government reads it (which is not the most liberal but is certainly a reasonable reading), then I agree with the Government that petitioner cannot prevail under Strickland, 466 U.S. 668, on his claim that his first lawyer was inadequate. There could be no objective unreasonableness in counsel's actions, as he obtained all of the available favorable guideline reduction factors in the plea agreement. Nor are there any facts to which petitioner alludes that counsel should have but did not use.

Thus, there could only be objective unreasonableness if petitioner was innocent and was somehow coerced by his counsel to accept the plea by using the possible adverse consequences of a trial to unreasonably pressure him. But petitioner does not allege that he did not know the package contained drugs, and even if he did, his plea allocution and statements to the agents would conclusively refute it. His only complaint is that he did not realize that he was going to be branded a "drug trafficker," which would lead to his deportation (a point I discuss below). Counsel's accurately advising petitioner of his exposure in the event he did not plead guilty is neither a "threat" nor "pressure." See e.g., Maldonado v. United States, 08 Civ. 7155, 2009 U.S. Dist. LEXIS 41669, at *15 (S.D.N.Y. May 18, 2009).

Nor can petitioner show that he was prejudiced under Strickland's second prong. He does not claim that he would have insisted on trial but for the pressure allegedly put on him by his first counsel. Considering the undisputed circumstantial evidence of his guilt that would have led to a conviction, most likely resulting in a much longer sentence and deportation, any such assertion would be incredible.

Finally, I find it significant that petitioner remains happy with the result he received from his second counsel. He had the opportunity to seek to withdraw his guilty plea, but while

7

represented by an attorney whose competence he still does not question, he decided against it. Although this does not necessarily waive his claims against the first attorney as the Government suggests, it certainly undercuts petitioner's argument; it is difficult to reconcile dissatisfaction with counsel for advising him to enter into the plea agreement and satisfaction with the attorney who did not seek to withdraw it. Cf. United States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996) (where defendant claimed ineffective assistance of counsel prior to his plea agreement but appeared satisfied with his successor counsel who represented defendant at the time of his plea, the guilty plea "effectively waived all ineffective assistance claims relating to events prior to the guilty plea."). Disregarding this would in effect encourage defendants to take two bites at the apple – stand on the plea through sentencing, hope for leniency, and if unsatisfied, move to withdraw the plea by arguing ineffective assistance of counsel.

I do think, however, that the Government's reading of the petition is somewhat narrow. It is clear that what petitioner is unhappy with is that his plea agreement led to deportation proceedings. The real question is thus whether either of his counsel was ineffective for failing to advise him of the possibility of his deportation.

Most recently, the Supreme Court in Padilla v. Kentucky, 130 S. Ct. 1473 (U.S. 2010), held that counsel is ineffective if he does not advise a defendant of the deportation consequences of his guilty plea. Padilla came down well after petitioner pled guilty. Nevertheless, some courts have held that Padilla should be applied retroactively because it merely reaffirms an old rule (Strickland) in a particular factual setting, see Teague v. Lane, 489 U.S. 288 (1989); others have declined to do the same, concluding that Padilla established a new constitutional right. Compare United States v. Chaidez, No. 03 CR 636-6, 2010 U.S. Dist. LEXIS 81860, at *3-20 (N.D. Ill. Aug. 11, 2010) (collecting cases, finding Padilla applicable retroactively) with, Gacko

8

v. United States, 09-CV-4938, 2010 U.S. Dist. LEXIS 50617, at*6 (E.D.N.Y. May 20, 2010) (no retroactivity).

I do not address this question because it is apparent that petitioner knew that he would be deported as a consequence of his plea. His counsel's statements during sentencing make it clear that this was expressly discussed with the Government during his proffer sessions, and it was petitioner's knowledge that he would be deported – and retaliated against in his home country – that led him to elect not to cooperate with the Government. If petitioner was not happy with the possibility of deportation, he should have raised that with his second attorney, whom I appointed precisely for the purpose of advising him whether to withdraw the plea.

By the time he decided to stand on the plea, petitioner already knew that he was likely going to be deported. As courts applying Padilla have recognized, when a defendant learns of the deportation consequences of his plea from a source other than his attorney, he is unable to satisfy Strickland's second prong because he has not suffered prejudice. See e.g., Gonzalez v. United States, 10 Civ. 5463, 2010 U.S. Dist. LEXIS 92056, at *3-4 (S.D.N.Y. Sept. 3, 2010) (assuming that counsel did not advise defendant that he could be deported as a result of his guilty plea, defendant not prejudiced because the court advised him of the consequences prior to accepting his plea); see also Zhang v. United States, 506 F.3d 162, 164, 169 (2d Cir. 2007) (dismissing defendant's claim that his guilty plea was involuntary because he was unaware of the deportation consequences, where the judge at the plea allocution told the defendant that his conviction "could result" in deportation). Here, it is clear that at the very least, petitioner learned those consequences from his second attorney.

Petitioner probably saw a new ray of hope when the Immigration Judge told him he was being deported as a "drug trafficker," because in his own mind, he made a distinction between

trafficking in drugs and serving as a buffer in an occasional drug transaction. Immigration law, of course, makes no such distinction. See 8 U.S.C. § 1101(a)(43)(B); 18 U.S.C. § 924(c). Petitioner was therefore left in the same position in which he always expected to be – convicted of a crime to which he pled guilty and subject to deportation. The non-existent distinction he makes cannot form the foundation for a claim of ineffective assistance of counsel.

## CONCLUSION

For the reasons set forth above, the petition is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability shall not issue. See 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962). The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se* at his last known address.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
December 16, 2010